1
2
3
4
5
6
7
8                     UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10

11   MARCUS ANDREWS,                    )   Case No. 10cv2109-BEN (BLM)
                                        )
12                 Petitioner,          )   **REPORT AND RECOMMENDATION**
     v.                                 )   **FOR ORDER GRANTING**
13                                      )   **RESPONDENT'S MOTION TO**
     MIKE KNOWLES, Warden, et al.,      )   **DISMISS**
14                                      )
                   Respondents.         )
15                                      )   [ECF No. 9]
                                        )
16   _____   )

17          This Report and Recommendation is submitted to United States District Judge Roger T.

18   Benitez pursuant to 28 U.S.C. § 636(b) and Civil Local Rules 72.1(d) and HC.2 of the United

19   States District Court for the Southern District of California.

20          On September 20, 2010, Petitioner, a state prisoner appearing *pro se*, filed a Petition for

21   Writ of Habeas Corpus.[1]  ECF No. 1.  However, because Petitioner failed to sign the Petition

22   under penalty of perjury, the Court "dismisse[d] the [Petition] without prejudice to refiling of a

23   'First Amended Petition for Writ of Habeas Corpus' which is <u>signed</u> by Petitioner."  ECF No. 3 at

24   1-2.  Petitioner corrected this deficiency in a First Amended Petition ("Pet.") filed on October 26,

25   _____

26          [1] In determining the filing date of a petition, *pro se* prisoners generally are entitled to the benefit of the
     "mailbox rule," which dictates that the statutory filing date is the date a document was presented to prison authorities
27   for mailing to the court.  <u>See</u> <u>Houston v. Lack</u>, 487 U.S. 266, 276 (1988) (holding that petitioner's notice of appeal
     is deemed "filed at the time [he] deliver[s] it to the prison authorities for forwarding to the court clerk"); <u>Huizar v.</u>
28   <u>Carey</u>, 273 F.3d 1220, 1223 (9th Cir. 2001) (recognizing the application of <u>Houston</u>'s mailbox rule to federal habeas
     filings).  Here, Petitioner presented his original Petition to prison authorities on September 20, 2010.  ECF No. 1 at
     13.

2010.[2]  ECF No. 4.  Petitioner challenges the trial court's jury instructions, the sentencing court's imposition of an upper term, and the trial court's imposition of a restitution fine.  Pet. at 7-10. On February 28, 2011, Respondent moved to dismiss the Petition.  ECF No. 9 ("Mot. Dismiss"). After receiving three extensions of time from the Court, Petitioner opposed the motion to dismiss on July 8, 2011.  ECF No. 26 ("Opp'n").  The Court took the matter under submission.  ECF No. 8 at 3.

This Court has considered the above documents as well as the record as a whole.  Based thereon, and for the reasons set forth below, this Court **RECOMMENDS** that Respondent's Motion to Dismiss be **GRANTED**.

### FACTUAL AND PROCEDURAL BACKGROUND

On March 14, 2006, a jury convicted Petitioner of first degree murder, with the special circumstance that it was committed by shooting from a vehicle with the intent to kill (count 1); two counts of attempted murder, one that was premeditated (counts 2 & 7); two counts of assault with a semiautomatic firearm (counts 3 & 8); three counts of discharging a firearm from a motor vehicle at another person (counts 4, 5, & 9); and shooting at an unoccupied vehicle (count 6).  Lodgment 1 at 1-2.  The jury also found true allegations that Petitioner committed counts 1, 2, 4, and 5 by intentionally and personally discharging a firearm that proximately caused great bodily injury or death to a person other than an accomplice; that he intentionally and personally inflicted great bodily injury on a person not an accomplice during the commission of counts 2, 3, and 4; that he personally used a firearm in committing counts 3 and 8; and that he intentionally and personally discharged a firearm in committing count 7.  Id. at 2.

On June 5, 2006, the trial court sentenced Petitioner to life without parole.  Id. at 2; Pet. at 2.  Specifically, the trial court sentenced Petitioner to life without the possibility of parole for

---

[2]  When a district court expressly or impliedly retains jurisdiction over the original habeas petition, the amended petition will relate back to the filing date of the original petition.  See Henry v. Lungren, 164 F.3d 1240, 1241 (9th Cir. 1999) (citing former Fed. R. Civ. P. 15(c)(2)); Ramirez-Salgado v. Scribner, No. 08cv562-WQH-WMc, 2009 WL 211117, at *7 (S.D. Cal. Jan. 22, 2009).  Here, when Petitioner's original Petition was dismissed, the Court impliedly, if not expressly, retained jurisdiction.  See ECF No. 3.  In addition, the claims Petitioner raises in his First Amended Petition were included in the original Petition he filed on September 20, 2010.  Compare ECF No. 1 at 7-11, with ECF No. 4 at 7-10.  Thus, although the First Amended Petition is the operative petition in this case, the First Amended Petition relates back to the original Petition filed on September 20, 2010, making September 20, 2010 the operative filing date in federal court.

1   the count 1 murder with special circumstances; imposed a consecutive nine-year determinate
2   upper term with an indeterminate term of 25 years to life for the personal and intentional
3   discharge of a firearm causing great bodily injury enhancement for the count 2 attempted
4   murder plus a consecutive indeterminate life term for the count 7 premeditated attempted
5   murder with its accompanying enhancement of 20 years for the personal and intentional
6   discharge of a firearm; imposed a consecutive term of eight months for the count 6 shooting at
7   an unoccupied vehicle; and stayed execution on all other counts and enhancements.  Lodgment
8   1 at 2.  Additionally, the court imposed various restitution fines, including a $10,000 parole
9   revocation fine.  Id.

10  **A.    Direct Appeal**

11       Petitioner appealed to the California Court of Appeal, Fourth Appellate District, Division
12  One, raising four claims for relief. Lodgment 1.  Specifically, Petitioner alleged that the trial court
13  prejudicially erred in: 1) failing to instruct the jurors on voluntary manslaughter based upon heat
14  of passion and unreasonable self-defense as a lesser offense of the count 1 murder; (2) giving
15  the jurors instructions on the count 2 attempted murder that were confusing and misleading and
16  may have resulted in a guilty verdict without finding the required specific intent to kill; (3)
17  imposing upper terms based on factors he neither admitted nor the jury found true in violation
18  of his constitutional rights to a jury trial; and (4) imposing a parole revocation fine when he is
19  not eligible for parole.  Id. at 2-3.  In an unpublished opinion filed on July 21, 2008, the Court
20  of Appeal modified Petitioner's sentence, but otherwise affirmed the judgment.  Id. at 1, 3, 27.
21       On September 2, 2008, Petitioner filed a petition for review in the California Supreme
22  Court, alleging the same two claims regarding jury instructions that he presented in his direct
23  appeal before the lower court.  Lodgment 2.  The California Supreme Court summarily denied
24  the petition without citation of authority on October 16, 2008.  Lodgment 3.

25  **B.    Collateral Review**

26       Although Petitioner indicated in his Petition that he did not seek collateral review in the
27  California state courts (Pet. at 4), Petitioner actually filed a Petition for Writ of Habeas Corpus
28  in the Superior Court of California on October 20, 2009, arguing that the trial court erred in its

1   jury instructions regarding attempted murder.[3]  Opp'n Ex. D, at 2.  The Superior Court denied

2   this petition on December 21, 2009.  Id.

3          Petitioner filed his federal habeas petition on September 20, 2010.[4]  ECF No. 1 at 13.

4                                    **SCOPE OF REVIEW**

5          Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal

6   habeas corpus claims:

7          The Supreme Court, a Justice thereof, a circuit judge, or a district court shall
           entertain an application for a writ of habeas corpus in behalf of a person in custody
8          pursuant to the judgment of a State court only on the ground that he is in custody
           in violation of the Constitution or laws or treaties of the United States.
9

10  28 U.S.C. § 2254(a) (1996).

11                                    **DISCUSSION**

12         Respondent moves to dismiss the Petition on two grounds: 1) the Petition is untimely; and

13  2) the Petition is unexhausted.  Mot. Dismiss at 7-9.[5]  Petitioner contends that his Petition is

14  timely pursuant to statutory and equitable tolling and that the Court should allow him to proceed

15  on his properly exhausted claims.  Opp'n at 3-9.

16  **A.     The Petition is Untimely**

17         Respondent contends that the Petition is "facially untimely" and that Petitioner is entitled

18  to neither statutory nor equitable tolling. Mot. Dismiss at 7-9.  In contrast, Petitioner argues that

19  his Petition is timely because he is entitled to both statutory and equitable tolling.  Opp'n at 3-8.

20         1.     The AEDPA Statute of Limitations

21         The instant Petition was filed after enactment of the Anti-Terrorism and Effective Death

22  Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, and the AEDPA imposes a

23  one-year statute of limitations on federal petitions for writ of habeas corpus filed by state

24  prisoners.  28 U.S.C. § 2244(d).  The one-year limitations period runs from the latest of:

25

26         _____

           [3] Surprisingly, Respondent apparently was unaware of Petitioner's state court habeas petition.  See, e.g., Mot.
27  Dismiss at 5 ("[Petitioner] is not entitled to any statutory tolling, as he never filed for state habeas relief.").

           [4] See supra notes 1-2.

28         [5] Page references are to Respondent's Memorandum of Points and Authorities in Support of his Motion to
    Dismiss (ECF No. 9-1).

                                              4

(A) the date on which the judgment became final by the conclusion of direct review of the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D).

Here, the California Supreme Court denied Petitioner's petition for review on October 16, 2008. Lodgment 3. Petitioner did not file a petition for certiorari with the United States Supreme Court, so the judgment became final and the statute of limitations began to run on January 14, 2009—ninety days after the California Supreme Court's decision. See Bowen v. Roe, 188 F.3d 1157, 1158-59 (9th Cir. 1999) (stating limitations period does not begin until after expiration of ninety-day period for seeking certiorari). Thus, absent tolling, the limitations period expired one year later, on January 14, 2010. See 28 U.S.C. § 2244(d). Because Petitioner did not file the instant Petition until September 20, 2010, his Petition is not timely unless he is entitled to statutory and/or equitable tolling.

2.   Petitioner Is Entitled to Statutory Tolling

Respondent asserts that "[Petitioner] never filed for habeas relief in state court, so he does not qualify for statutory tolling." Mot. Dismiss at 8. Petitioner, however, presents evidence that he timely filed a Petition for Writ of Habeas Corpus on October 20, 2009 in California Superior Court, and argues that he is entitled to statutory tolling from that date until December 21, 2009, when the Superior Court denied his petition. Opp'n at 4-5; see Opp'n Ex. D.

The AEDPA tolls its one-year limitations period for the "time during which a properly filed application for State post-conviction or other collateral review . . . is pending . . . ." 28 U.S.C. § 2244(d)(2); see also Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999). The statute of limitations is not tolled, however, "from the time a final decision is issued on direct state appeal [to] the time the first state collateral challenge is filed." Nino, 183 F.3d at 1006. Similarly, the

10cv2109-BEN (BLM)

1   limitations period is not tolled after state post-conviction proceedings are final and before federal

2   habeas proceedings are initiated.  See 28 U.S.C. § 2244(d)(2).

3        In this case, Petitioner is entitled to statutory tolling.  The statute of limitations began to

4   run on January 14, 2009, when Petitioner's judgment became final, but it stopped running 279

5   days later on October 20, 2009, when Petitioner filed his habeas petition in the California

6   Superior Court.  Opp'n Ex. D, at 2; see 28 U.S.C. § 2244(d)(2); Nino, 183 F.3d at 1006.  The

7   statutory clock resumed running on December 21, 2009, when the Superior Court denied

8   Petitioner's habeas petition.  Opp'n Ex. D; see 28 U.S.C. § 2244(d)(2).  Because Petitioner did

9   not file any more state habeas petitions,[6] the statute of limitations expired 86 days later on

10  March 17, 2010.  Thus, unless Petitioner establishes an entitlement to equitable tolling, the

11  instant Petition is time barred.

12        3.    Petitioner Fails to Show that Equitable Tolling is Warranted

13        Respondent argues that "[Petitioner] makes no claim for equitable tolling.  Without such

14  tolling his Petition is untimely."  Mot. Dismiss at 8-9.  Petitioner concedes that statutory tolling,

15  by itself, does not transform his untimely Petition into a timely one.  Opp'n at 4.  However,

16  Petitioner argues that he is also entitled to equitable tolling because he was pursuing his rights

17  diligently   through   the   assistance   of   jailhouse   litigants   and   that   extraordinary

18  circumstances—namely, a prison lockdown—prevented him from timely filing his Petition.  Id.

19  at 6-7.  Petitioner further argues that his mental incompetence and mental illness entitle him to

20  equitable tolling.  Id. at 7-8.

21        A petitioner is entitled to equitable tolling of the statute of limitations "only if he shows

22  '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance

23  stood in his way' and prevented timely filing."  Holland v. Florida, --- U.S. ----, 130 S. Ct. 2549,

24  2562 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).  "When external forces,

25  rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable

---

26

27   [6] Neither party claims that Petitioner filed a habeas petition in the California Court of Appeal or the California
     Supreme Court after the California Superior Court denied his petition.  Moreover, this Court independently searched
28   the California Courts' website and found no records indicating that Petitioner filed a habeas petition in the California
     Courts of Appeal or the California Supreme Court.  See http://appellatecases.courtinfo.ca.gov/index.html (last visited
     August 10, 2011).  Accordingly, there is no evidence to support Petitioner's proffered argument that he is entitled to
     "interval tolling."  See Opp'n at 4 (citing Gaston v. Palmer, 417 F.3d 1030 (9th Cir. 2005)).

tolling may be appropriate." <u>Miles v. Prunty</u>, 187 F.3d 1104, 1107 (9th Cir. 1999).  However, the petitioner must show that the alleged "extraordinary circumstances" were the "'cause of [the] untimeliness.'" <u>Roy v. Lampert</u>, 465 F.3d 964, 969 (9th Cir. 2006) (quoting <u>Spitsyn v. Moore</u>, 345 F.3d 796, 799 (9th Cir. 2003)).  The threshold necessary to trigger equitable tolling "is very high, lest the exceptions swallow the rule." <u>Waldron-Ramsey v. Pacholke</u>, 556 F.3d 1008, 1011 (9th Cir. 2009) (citations and internal quotations omitted).  "This high bar is necessary to effectuate the 'AEDPA's statutory purpose of encouraging prompt filings in federal court in order to protect the federal system from being forced to hear stale claims.'" <u>Mendoza v. Carey</u>, 449 F.3d 1065, 1068 (9th Cir. 2006) (quoting <u>Guillory v. Roe</u>, 329 F.3d 1015, 1018 (9th Cir. 2003)).

a.     <u>Extraordinary Circumstances</u>

Petitioner contends that, starting in January 2010, a year-long institutional lockdown in his prison facility denied him "help from jail-house litigates" as well as "access to the law library to obtain legal documents [and] research case law" in order to "properly and timely" file his petition.  Opp'n at 6.  Petitioner further argues that he was dependent upon help from "jail-house litigates" because he only recently learned how to read and write, and even after doing so, he still "lacked the compacity [sic] to understand or file legal documents into the courts . . . ." <u>Id.</u> Finally, Petitioner asserts that he is entitled to equitable tolling because he suffers from "Manic Depression Bipolar Disorder" and the side effects of his prescribed psychotropic medications cause him "significant impairments." <u>Id.</u> at 7-8.  The Court will address each of these arguments in turn.

i.     <u>Prison Lockdown and Access to the Law Library</u>

Petitioner argues that he was subjected to a lengthy lockdown during which time he was unable to get assistance from fellow inmates, upon whom he relied, and he was unable to access the law library.  Opp'n at 6, Ex. A.

Ordinary prison conditions such as temporary restrictions on access to the law library do not constitute extraordinary circumstances sufficient to justify equitable tolling.  <u>See, e.g.</u>, <u>Ramirez v. Yates</u>, 571 F.3d 993, 998 (9th Cir. 2009) ("Given even the most common day-to-day security restrictions in prison, concluding otherwise would permit the exception to swallow the

7

rule—according to [the petitioner's] theory, AEDPA's limitations period would be tolled for the duration of any and every prisoner's stay in administrative segregation, and likely under a far broader range of circumstances as well.")  Lockdowns warrant equitable tolling only where the lockdown period is substantial and where, during that period, the prisoner is denied access to materials the prisoner needs to file a petition, despite diligent efforts to obtain those materials. See Espinoza-Matthews v. California, 432 F.3d 1021, 1028 (9th Cir. 2005) ("For nearly 11 months, despite his diligence, [petitioner] could not obtain his legal papers.").  Deprivation of legal materials can be a type of external impediment warranting equitable tolling, see Lott v. Mueller, 304 F.3d 918, 924-25 (9th Cir. 2002), but Petitioner "bears the burden of showing his own diligence and that the hardship caused by lack of access to his materials was an extraordinary circumstance that caused him to file his petition . . . late." Waldron-Ramsey, 556 F.3d at 1013 (citing Pace, 544 U.S. at 418).

Here, Petitioner does not establish that the lockdown deprived him of access to his legal file and he similarly fails to specify which "legal documents" he needed but allegedly was unable to obtain or how the absence of those documents prevented him from filing his Petition.  See Waldron-Ramsey, 556 F.3d at 1013-14 (denying equitable tolling based on lack of access to documents because "[the petitioner] d[id] not point to specific instances where he needed a particular document, could not have kept that document within his permitted three boxes had he been cooperative, and could not have procured that particular document when needed."). Petitioner claims that "access to the law library . . . [was] denied due to th[e] Institutional lockdown," but the prison memoranda attached to Petitioner's Opposition indicates that "Modified Program Inmates" were always allowed access to the law library pursuant to the "paging system." Opp'n Ex. A.  Accordingly, Petitioner was ensured, rather than denied, access to the law library for the duration of the lockdown.  See 15 C.C.R. § 3123(c)-(e).[7]

---

[7] "When unable to physically access the law library, an inmate may request access to legal material through delivery of those materials to the inmate by library staff.  This process is referred to as law library paging."  15 C.C.R. § 3123(c).  "Inmates who are limited to law library paging due to a lockdown or modified program shall, whenever possible, have their law library access restored within 16 calendar days unless a high security risk continues to exist to prohibit physical law library access."  15 C.C.R. § 3123(d).  "When inmates are limited to law library paging for any reason as described in section 3123(c), law library staff must deliver the requested legal material to their cells as soon as possible, but no later than 16 calendar days from the date of the paging request."  15 C.C.R. § 3123(e).

Ultimately, despite Petitioner's characterizations to the contrary, neither a lockdown nor the difficulty in obtaining help from "jail-house litigates" constitutes "extraordinary circumstances." See Chaffer v. Prosper, 592 F.3d 1046, 1049 (9th Cir. 2010) ("[The petitioner] alleges that his pro se status, a prison library that was missing a handful of reporter volumes, and reliance on helpers who were transferred or too busy to attend to his petitions justified the delay; however, these circumstances are hardly extraordinary given the vicissitudes of prison life, and there is no indication in the record that they made it 'impossible' for him to file on time."). Because Petitioner has only described ordinary prison conditions, he has failed to demonstrate that an "extraordinary circumstance" actually prevented his timely filing of the instant Petition.

### ii.   Mental Incompetence

Petitioner argues that his lack of formal education rendered him unable to timely prepare and file his Petition. Opp'n at 7. Petitioner asserts that he was completely reliant upon others for help and that "[d]uring Petitioner's entire pursuit for post-conviction relief, every legal document filed . . . has been done so through jail house litigate[s] . . . ." Id. at 8.

The Ninth Circuit has held that "a 'putative habeas petitioner's mental incompetency [is] a condition that is, obviously, an extraordinary circumstance beyond the prisoner's control,' so 'mental incompetency justifies equitable tolling' of the AEDPA statute of limitations." Laws v. Lamarque, 351 F.3d 919, 923 (9th Cir. 2003) (quoting Calderon v. United States District Court (Kelly), 163 F.3d 530, 541 (9th Cir. 1998) (en banc)). However, a petitioner's pro se status and claims of ignorance of the law are insufficient to justify equitable tolling. See Raspberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006) ("[A] pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling."); Hughes v. Idaho State Bd. of Corr., 800 F.2d 905, 909 (9th Cir. 1986) (pro se prisoner's illiteracy and lack of knowledge of law was unfortunate, but insufficient to establish cause); Fisher v. Ramirez-Palmer, 219 F. Supp. 2d 1076, 1080 (E.D. Cal. 2002) ("[I]gnorance of the law does not constitute such extraordinary circumstances."); Sperling v. White, 30 F. Supp. 2d 1246, 1254 (C.D. Cal. 1998) (citing with approval cases from various circuits rejecting equitable tolling based on petitioner's lack of legal experience or literacy). Notably, a petitioner who relies on others to assist him

9

1    retains the "'personal responsibility of complying with the law.'"   Chaffer, 592 F.3d at 1049

2    (quoting March v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000)).

3         Here, Petitioner seemingly conflates mental incompetency with a lack of education and/or

4    lack of familiarity with the law.  Petitioner asserts that he "lacked the ability to read and write,"

5    but he also states that he received his G.E.D.  Opp'n at 6-7.  According to the verification

6    Petitioner attached to his Petition, he had passed his G.E.D. exam as of October 20, 2009.  Opp'n

7    Ex. E.[8]  Petitioner's arguments relating to his illiteracy and resulting incompetency are therefore

8    unavailing because he obtained his G.E.D. 148 days prior to his March 17, 2010 filing deadline.

9    Petitioner contends, however, that even after becoming literate, he was still unable to

10   "understand or file legal documents . . . without assistance of jail-house litigates."  Opp'n at 7.

11   However, Petitioner's lack of legal knowledge does not establish "extraordinary circumstances"

12   preventing him from timely filing a federal habeas petition.  See, e.g., Raspberry, 448 F.3d at

13   1154; see also Chaffer, 592 F.3d at 1049 ("While [petitioner] asserts that he relied on whatever

14   volunteer assistance he could find to file in a timely and diligent manner, the fact that an inmate

15   law clerk was assisting in drafting the state petition does not relieve him from the personal

16   responsibility of complying with the law.") (internal quotation marks, brackets, and citation

17   omitted); Rodriguez v. Walker, No. 1:09-cv-01376-JLT HC, 2010 WL 3943629, at *5 (E.D. Cal.

18   Oct. 4, 2010).[9]  Thus, Petitioner's claims of illiteracy, insufficient education, lack of legal

19   knowledge, and limited access to jailhouse legal assistance do not establish the requisite

20   "extraordinary circumstances."

21                        iii.    Mental Illness

22        Petitioner states that he has been prescribed psychotropic medications since 2001 because

23   he suffers from "Manic Depression Bipolar Disorder."  Opp'n at 8.  Petitioner contends that these

24   _____

25        [8] Petitioner labeled both his fourth and fifth exhibits as Exhibit D, so the Court construes his fifth exhibit as
     Exhibit E.  See Opp'n at 42, 45.

26        [9] "Petitioner's indigent status, his limited legal knowledge, and the vicissitudes of prison life are circumstances
27   that are no different than those incurred by the vast majority of incarcerated prisoners attempting to file petitions for
     writ of habeas corpus.  Nor is his inability to locate and sustain a productive relationship with a 'jailhouse lawyer'
     grounds for equitable tolling.  Such circumstances, are, by definition, not extraordinary, since they are shared by all
28   state inmates proceeding pro se, and thus do not justify equitable tolling.  If limited resources and lack of legal
     knowledge were an excuse for not complying with the limitations period, then Congress would have never enacted
     the AEDPA since most incarcerated prisoners have these same problems."  Rodriguez, 2010 WL 3943629, at *5.

1   medications cause him "significant impairments and side effects that rendered him mentally

2   incompetent, an[d] unable to understand his legal rights or manage his legal affairs without legal

3   assistance form jailhouse litigates . . . ." Id.

4        The Ninth Circuit has held that petitioners must satisfy a two-part test to be eligible for

5   equitable tolling due to mental impairment:

6        (1) *First*, a petitioner must show his mental impairment was an "extraordinary
     circumstance" beyond his control by demonstrating the impairment was so severe
7        that either (a) petitioner was unable rationally or factually to personally understand
     the need to timely file, or (b) petitioner's mental state rendered him unable
8        personally to prepare a habeas petition and effectuate its filing. (2) *Second*, the
     petitioner must show diligence in pursuing the claims to the extent he could
9        understand them, but that the mental impairment made it impossible to meet the
     filing deadline under the totality of the circumstances, including reasonably
10       available access to assistance. To reiterate: the "extraordinary circumstance" of
     mental impairment can cause an untimely habeas petition at difference stages in
11       the process of filing by preventing petitioner from understanding the need to file,
     effectuating a filing on his own, or finding and utilizing assistance to file. The
12       "totality of the circumstances" inquiry in the second prong considers whether the
     petitioner's impairment was a but-for cause of any delay. Thus, a petitioner's
13       mental impairment might justify equitable tolling if it interferes with the ability to
     understand the need for assistance, the ability to secure it, or the ability to
14       cooperate with or monitor assistance the petitioner does secure. The petitioner
     therefore always remains accountable for diligence in pursuing his or her rights.

15

16   Bills v. Clark, 628 F.3d 1092, 1099-1100 (9th Cir. 2010) (footnote and citations omitted). Thus,

17   a pro se petitioner's mental incompetence may constitute an "extraordinary circumstance" that

18   warrants equitable tolling if it affects his ability to file a timely habeas petition. Laws, 351 F.3d

19   at 923. However, where a prisoner fails to show "any causal connection" between the particular

20   mental incompetency upon which he asserts a right to equitable tolling and his inability to timely

21   file a federal habeas application, the equitable tolling claim will be denied. See Gatson v. Palmer,

22   417 F.3d 1030, 1034 (9th Cir. 2005), amended by 447 F.3d 1165 (9th Cir. 2006) (holding it was

23   not clear error to find equitable tolling inapplicable where prisoner fails to show causal

24   connection between physical and mental disabilities and inability to timely file petition); see also

25   Spitsyn, 345 F.3d at 799 (holding that petitioner bears the burden to show that mental disability

26   was the proximate cause of his untimeliness, rather than merely a lack of diligence on his part).

27   Ultimately, "a mental condition that burdens but does not prevent a prisoner from filing a timely

28   petition does not constitute extraordinary circumstances justifying equitable tolling." Pelaya v.

1  Cate, No. CV 10-2270-VBF (VBK), 2011 WL 976771, at *6 (C.D. Cal. Jan. 18, 2011).

2       Here, the medical records Petitioner relies upon do not satisfy the two-part test articulated

3  in Bills to establish eligibility for equitable tolling based on a mental impairment.  With respect

4  to the first part of the test, Petitioner has not shown his impairment was "so severe" he could

5  not "rationally or factually . . . understand the need to timely file" or that his "mental state

6  rendered him unable personally to prepare a habeas petition and effectuate its filing." Bills, 628

7  F.3d at 1099-1100.  Petitioner provides the Court with signed "Statewide Psychotropic Medication

8  Consent Forms" in which Petitioner apparently agrees to take certain medications and

9  acknowledges the potential side effects and several "Physician's Orders" prescribing specific

10  medications and dosages.  Opp'n Ex. C, at 27-41.  These records contain a variety of dates in

11  2006-2008 and 2011.  Id.  However, Petitioner provides no documentation from a physician

12  regarding why or for what mental illness(es) Petitioner was prescribed the medication.  See id.

13  Similarly, no documents provide any details regarding Petitioner's diagnosis and/or the level of

14  Petitioner's mental functioning.  Although the medication consent forms list the potential side

15  effects of certain medications, nothing, such as a mental health evaluation, indicates that

16  Petitioner actually suffered from those listed side effects.[10]  See id.  Thus, the medication consent

17  forms and the physician's orders Petitioner attached to his Opposition do not cast doubt on

18  Petitioner's ability to understand or manage his legal affairs.  Similarly, with respect to the

19  second part of the Bills test, Petitioner has not shown diligence in pursuit of his claims "but that

20  the mental impairment made it impossible to meet the filing deadline under the totality of the

21  circumstances, including reasonably available access to assistance."  628 F.3d at 1100.  Petitioner

22  provides no sufficiently instructive medical, psychiatric, or psychological records to support his

23  mental illness claim, and Petitioner fails to explain exactly what his mental ailments are, during

24  _____

25      [10] Notably, the medication consent form which Petitioner signed states, "I understand I am to inform the staff
26  if I have side effects," yet Petitioner included no documentation indicating he made any such reports to any staff
members.  Opp'n Ex. C, at 1.  The form also states, "Should I decide to stop or decrease me psychiatric medication(s),
I have been informed to do this under the guidance of staff and not to stop medication(s) suddenly."  Id.  However,
27  Petitioner states that he "tried to quit all these much needed medication [sic] for his mental illness 'cold turkey' to
learn how to read and write, an[d] become cognizance [sic] enough to assist and trust jailhouse litigate [sic] in
28  pursuing his post conviction relief . . . ."  Opp'n at 8.  Petitioner, therefore, cannot claim that he lacked "the ability
to understand the need for assistance, the ability to secure it, or the ability to cooperate with or monitor [the]
assistance" that he ultimately secured.  Bills, 628 F.3d at 1100.

what periods of time he was experiencing them, what medication he was taking and for what duration, and precisely how his mental ailments affected his ability to file a timely habeas petition.[11]  Ultimately, Petitioner has failed to show any evidence of ongoing periods of mental incompetency or severe mental illness, or that his mental ailment(s) prevented him from filing on time, and his conclusory arguments for equitable tolling are unavailing.  See Gatson, 417 F.3d at 1034; see also Laws, 351 F.3d at 923.  Accordingly, the Court finds that Petitioner has failed to demonstrate that he had a severe mental impairment constituting an "extraordinary circumstance" warranting equitable tolling.

### b.    Diligence

Petitioner's sole argument regarding his diligence is a conclusory assertion that he "ha[s] been pursuing his rights diligently through the assistance of jail-house litigates, after appellate counsel Kimberly J. Grove carried Petitioner's proceedings from his opening brief, up until the California Supreme Court's denial of petition of review October 16, 2008."  Opp'n at 6.

Even if Petitioner had established some "extraordinary circumstance" entitling him to equitable tolling, the Court finds that Petitioner has not demonstrated that he diligently pursued his rights from the time his conviction became final until the time he filed the instant Petition.  See Chaffer, 592 F.3d at 1049 ("[The petitioner] has also failed to show that he has been diligently pursuing his rights . . . .  Indeed, he fails to make any specific allegation what he did to pursue his claims and complain about his situation."); Waldron-Ramsey, 556 F.3d at 1014

---

[11] The relevant time period for the purpose of equitable tolling in this case is from December 21, 2009 (when the statutorily tolled limitations period began running again) to September 20, 2010 (when Petitioner constructively filed the instant Petition).  Petitioner submitted documents indicating he was on a prescribed medication regimen in 2006, 2007, 2008, and 2011, but nothing indicates that Petitioner was taking any medication in 2009 or 2010.  Thus, while Petitioner contends that he suffers from mental incompetence and mental illness, he does not expressly allege that he suffered from these impairments during the relevant period.  None of the documents attached to Petitioner's Opposition establish that Petitioner's mental condition was in any way a cause, let alone a "but for" cause, of Petitioner's failure to timely file a federal petition between December 21, 2009 and March 17, 2010.  See Roberts v. Marshall, 627 F.3d 768, 773 (9th Cir. 2010) (holding petitioner was not entitled to equitable tolling for mental impairments during period in which he was able to file state habeas petitions raising the same arguments he presented in his federal habeas petition); Shafer v. Knowles, No. C03-1165SI(PR), 2003 WL 22127878, at *2 (N.D. Cal. Aug. 14, 2003) (holding no equitable tolling where petitioner was in a mental health facility, had twice attempted suicide, had "crisis bed stays," and was taking medication but failed to show mental incompetence during relevant time period).  Even if Petitioner was receiving mental health treatment while the limitations period was running, his medical records do no demonstrate a mental incapacity so severe that it prevented him from understanding and acting upon his rights.  See Howell v. Roe, No. C 02-1824 SI, 2003 WL 403353, at *4 (N.D. Cal. Feb. 20, 2003) (rejecting equitable tolling where petitioner's suicidal nature and depression did not make him mentally incompetent).

1   ("[E]ven if [the petitioner] may have faced some difficulty developing his claims without constant

2   possession of all his records, he has not adequately explained why he filed 340 days after his

3   AEDPA deadline.  If diligent, [the petitioner] could have prepared a basic form habeas petition

4   and filed it to satisfy the AEDPA deadline . . . .").

5        Because Petitioner has failed to satisfy either prong of the equitable tolling inquiry, the

6   Court finds that the statute of limitations should not be equitably tolled, and the instant habeas

7   petition is untimely.  Accordingly, the Court **RECOMMENDS** that Respondent's Motion to Dismiss

8   based on Petitioner's untimeliness be **GRANTED**.

9   **B.      The Petition is Unexhausted**

10       Respondent also contends that the Petition is unexhausted because "[Petitioner] raised

11   only two of his four claims in the California Supreme Court."  Mot. Dismiss at 9.   In his

12   Opposition, Petitioner concedes that he "raised only two of his four claims in the California

13   Supreme Court."  Opp'n at 9.  However, Petitioner requests that the Court dismiss his two

14   unexhausted claims without prejudice and proceed with his two remaining claims.  Id.

15       Generally, the exhaustion of available state judicial remedies is a prerequisite to a federal

16   court's consideration of claims presented in habeas corpus proceedings.  28 U.S.C. § 2254(b);

17   Picard v. Connor, 404 U.S. 270, 275 (1971).  Exhaustion of a habeas petitioner's federal claims

18   requires that they have been "fairly presented" in each appropriate state court, including a state

19   supreme court with powers of discretionary review, and that the petitioner "alert[] [the state]

20   court to the federal nature of the claim."  Baldwin v. Reese, 541 U.S. 27, 29 (2004).  If state

21   remedies have not been exhausted as to any of the federal claims, the habeas petition typically

22   should be dismissed. Castille v. Peoples, 489 U.S. 346, 349 (1989); Rose v. Lundy, 455 U.S. 509,

23   522 (1982) (requiring dismissal of petitions that contain both exhausted and unexhausted claims,

24   commonly referred to as "mixed" petitions); see also Rhines v. Weber, 544 U.S. 269, 276-77

25   (2005) (confirming continued applicability of "total exhaustion rule" even after AEDPA imposed

26   one-year statute of limitations on habeas claims).  However, a petitioner has the option of

27   formally abandoning his unexhausted claims and proceeding with his exhausted claims.  See

28   Rose, 455 U.S. at 510, 520-21 (stating that a petitioner who files a mixed petition may

14

1   "resubmit[]the habeas petition to present only exhausted claims to the district court").  Once a

2   petitioner abandons his unexhausted claims, though, he may lose the ability to ever raise them

3   in federal court.  See Slack v. McDaniel, 529 U.S. 473, 486-87 (2000) (noting that if a prisoner

4   decides not to return to state court to exhaust and instead to proceed with his exhausted claims,

5   any subsequent petitions may be considered successive and subject to dismissal); see also 28

6   U.S.C. § 2244 (a)-(b).

7       Petitioner raises four grounds for relief in his Petition, and he indicates in his Petition that

8   he raised these same four grounds for relief in the California Supreme Court.  Pet. at 7-10.

9   However, this is not the case.  In his Petition, Petitioner alleges the same four claims for relief

10  presented to the California Court of Appeal (Lodgment 1), but Petitioner presented only two of

11  these claims to the California Supreme Court (Lodgment 2).  Respondent's argument that

12  Petitioner raised only two of his four claims in the California Supreme Court is, therefore,

13  technically correct, but Respondent seemingly fails to recognize that the California Court of

14  Appeal ruled in Petitioner's favor on his claim that the trial court improperly imposed upper

15  terms.  Lodgment 1 at 3.  The Court of Appeal modified the judgment to strike the upper terms

16  imposed, but noted that "it would be futile to remand the matter for resentencing of those upper

17  term counts at issue" because Petitioner's "total prison sentence is not capable of being served

18  in his lifetime."  Id.  The Court of Appeal therefore "impose[d] midterm sentences for those

19  counts and affirm[ed] the judgment as so modified."  Id.  Respondent is, however, correct in his

20  assertion that Petitioner did not exhaust his state remedies with respect to all of the claims

21  contained in his Petition because Petitioner did not argue against the imposition of a parole

22  revocation fine in his petition for review in the California Supreme Court.[12]  Lodgment 2 at 2.

23      Normally, when the Court is presented with a "mixed" petition, the Court must give the

24  petitioner the choice of exhausting the unexhausted claim(s) by returning to state court, or

25  abandoning the claim(s) and pursuing the remaining claim(s) in federal court.  See Rose, 455

26  U.S. at 510, 520-21; Jefferson v. Budge, 419 F.3d 1013, 1016 (9th Cir. 2005).  Here, however,

27  _____

28      [12]  Respondent does not argue that the two claims Petitioner presented to the California Supreme Court were not "fairly presented."  Accordingly, the Court does not address whether Petitioner alerted the California Supreme Court to the federal nature of his claims.  See Baldwin, 541 U.S. at 29.

Petitioner independently elected to abandon his unexhausted claims. Opp'n at 9 ("Here Petitioner ask[s] . . . [the Court] to dismiss his two unexhausted claims without prejudice, deny Respondent's Motion to Dismiss, proceed on with Petitioner's remaining two claims as timely due to extraordinary circumstances . . . and order Respondent to file an Answer to Petitioner's Habeas Petition."). Accordingly, in the event that Respondent's Motion to Dismiss is not granted on the basis of Petitioner's untimeliness, the Court **RECOMMENDS** that Respondent's Motion to Dismiss based on Petitioner's failure to exhaust his claims be **GRANTED** with leave to file a Second Amended Petition asserting only his two exhausted jury instruction claims (claims one and two of the instant Petition). See Rose, 455 U.S. at 510.

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Judge issue an Order: (1) approving and adopting this Report and Recommendation; (2) granting Respondent's Motion to Dismiss; and (3) dismissing this action in its entirety with prejudice as time barred.

**IT IS ORDERED** that no later than **August 24, 2011**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **September 7, 2011**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED.**

DATED: August 10, 2011

BARBARA L. MAJOR
United States Magistrate Judge

16                                                        10cv2109-BEN (BLM)